UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ANAYANSSI DÍAZ,

Plaintiff,

v.

INFOTECH AEROSPACE SERVICES, INC.; LUIS MERCADO; ADAM GRAVSETH; JEFFREY TRACEY (*SIC*)

Defendants.

Civil No. 10-1103 (JAF)

**OPINION AND ORDER**

Plaintiff Anayanssi Díaz ("Plaintiff") brings this action against Defendants, Infotech Aerospace Services, Incorporated ("Infotech"); Luis Mercado ("Mercado"); Adam Gravseth ("Gravseth"); and Jeffrey Tracy ("Tracy"). Plaintiff alleges violations of the Equal Pay Act, 29 U.S.C. § 206(d)(1), as well as disparate treatment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. (Docket No. 1.) Plaintiff also claims relief under Puerto Rico law, specifically 29 L.P.R.A. § 146 (2008) ("Law 100"); 29 L.P.R.A. § 1321 (2008) ("Law 69"); 29 L.P.R.A. § 146 (2008) ("Law 17"); 29 L.P.R.A. § 194 (2008) ("Law 115"); 31 L.P.R.A. §§ 5141–42 (2009) ("Article 1802" and "Article 1803"). Defendants move for summary judgment (Docket Nos. 43; 44), and Plaintiff opposes (Docket No. 49; 51; 53). Defendants reply to Plaintiff's opposition and statement of additional facts. (Docket Nos. 65–67.)

Civil No. 10-1103 (JAF) -2-

# I.

## **Factual and Procedural History**

We derive the following facts from the parties' motions, statements of uncontested material facts, and exhibits. (Docket Nos. 43; 44; 49; 49–1.)

In 2005, Plaintiff began working as a Performance Engineer for Infotech. (Docket No. 44 at 1.) Her starting salary was $40,000. (Id.) In September 2008, she was promoted to the position of Project Engineer, and awarded a salary of $50,000. (Id. at 4.) Plaintiff's rank after the promotion was as a Specialist III. (Id.) Earlier in 2008, Infotech had hired a male employee named Alex Soto ("Soto"), also at the rank of Specialist III, at a salary of $65,000. (Id. at 3.) In March 2009, Plaintiff inquired into the pay disparity between herself and Soto.[1] (Id. at 4.) Infotech told Plaintiff that it would conduct an investigation to determine whether the disparity was warranted. (Id.)

The results of Infotech's investigation are disputed, but both parties agree that in April 2009, Infotech offered Plaintiff a raise of $15,000. (Docket Nos. 44 at 5; 49 at 5.) This adjustment would have brought Plaintiff's total salary to $65,000, the same level as Soto's. (Docket Nos. 44 at 5; 49 at 5.) Plaintiff was unsatisfied with the prospective adjustment offer, and demanded that the raise be retroactive. (Docket No. 44 at 5.) IAS agreed to make the raise retroactive, on the condition that Plaintiff sign a no-fault general release.[2] (Id.) Plaintiff and

---

[1] Before Plaintiff inquired into the pay disparity, Plaintiff received "excellent" evaluations from her supervisors, while Soto's performance, at least initially, "was not good." (Docket No. 51–2 at 22–27.)

[2] The release did not extend to any claims arising after execution. (Docket No. 44 at 6.)

Civil No. 10-1103 (JAF) -3-

her attorney had reservations about the release. (Docket No. 49–2 at 3.) What happened next is in dispute: Defendants maintain that Plaintiff rejected the offer, while Plaintiff argues that Defendants inexplicably withdrew the offer. (Docket Nos. 44 at 6; 49 at 5; 49–2 at 3.)

Since that time, Plaintiff has continued to work at the company. She has continued to receive pay increases based on merit, and currently has a salary of $58,080.48. (Docket No. 44 at 6.) Plaintiff, however, maintains that Defendants have retaliated against her for inquiring into the pay disparity. (Docket Nos. 49 at 4–6; 49–2 at 3.) She cites several examples of alleged retaliation: In April 2009, Gravseth, formerly chief of operations, was temporarily reassigned to a new position as discipline chief. (Docket No. 44 at 9.) In his new position, Gravseth sat in a cubicle directly across from Plaintiff's desk. (Docket No. 44 at 10.) Gravseth inquired into Plaintiff's Utilization Rate, or percent of hours billed in the workplace. (Id.) Plaintiff alleges that codefendants Gravseth and Mercado, Infotech's Human Resources department manager, also began to harass her and supervise her closely. (Docket No. 49–2 at 3.) After three to four months, Gravseth returned to his former position as chief of operations. (Id.)

Plaintiff also complains that in April 2009, she was taken off an important project. (Docket Nos. 49 at 5; 49–1 at 3.) Defendants maintain this was because Plaintiff was, at the time, still occupied with another important project that required a full-time engineer. (Docket No. 44 at 10–11.) In 2009, Plaintiff requested an I-Pass, a security feature that provides remote access to Infotech's network and servers. (Docket No. 44 at 12–13.) Tracy was in charge of handling I-Pass requests. (Id. at 12.) Defendants granted the request only in 2010, after Plaintiff provided a medical justification for needing the I-Pass. (Id. at 12–13.) Plaintiff also

Civil No. 10-1103 (JAF)                                                                                           -4-

argues that Defendants have generally given her fewer work opportunities, which has affected her performance, as well as her emotional and physical health. (Docket Nos. 49 at 4–5; 49–2 at 1–4.) Defendants counter that although Plaintiff continues to garner generally positive evaluations, any decrease in Plaintiff's work opportunities are due to her own absenteeism. (Docket No. 67 at 1.)

## II.

### Summary Judgment Under Rule 56(c)

We must grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The movant may satisfy this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, to establish the absence of a genuine dispute of material fact, the movant need not produce evidence but may instead point to a lack of evidence supporting the nonmovant's case. See Fed. R. Civ. P. 56(c)(1)(B); see also Celotex, 477 U.S. at 325. "Once the moving party has made a preliminary showing that no genuine [dispute] of

Civil No. 10-1103 (JAF)                                                                                                    -5-

material fact exists, the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy [dispute]." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(1).

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the nonmovant. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150–51 (2000). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**III.**

**Analysis**

**A.    Equal Pay Act Claim**

Plaintiff alleges that codefendant Infotech violated the Equal Pay Act by paying her less than a similarly-situated male employee, Soto.[3] (Docket No. 1.) Defendants present two arguments in response. First, Defendants mount an affirmative defense for the pay disparity between Soto and Plaintiff. (Docket No. 43 at 9–10.) Defendants argue the pay disparity was based on legitimate factors "other than sex." (Id.) Second, Defendants contend that Plaintiff was paid more than similarly-situated male employees. (Docket No. 43 at 10.) After addressing each argument in turn, we find that a genuine dispute as to a material fact exists as to this claim.

The Equal Pay Act prohibits employers from discriminating, based on sex, "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the

---

[3] Plaintiff brings her EPA and Title VII claims against Infotech only, and brings her Puerto Rico law claims against all defendants. (Docket No. 1 at 7.)

Civil No. 10-1103 (JAF) -6-

opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d). To establish a prima-facie case, a plaintiff must show that the employer paid different wages to specific employees of the opposite sex for substantially equal work. Ingram v. Brink's, Inc., 414 F.3d 222, 232 (1st Cir. 2005) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)).

Once the plaintiff establishes a prima-facie case, the burden shifts to the defendant to show that its wage disparity was justified by one of four affirmative defenses. Id. (citing Corning Glass, 417 U.S. at 196). At this stage, the defendant carries the burden of proof, not just production, for his affirmative defenses. Id. The employer must show that the wage discrepancy resulted from: (1) a seniority system; (2) a merit system; (3) a system measuring earnings by quantity or quality of production; or (4) a differential based on a factor other than sex. Corning Glass, 417 U.S. at 196.

Defendants seem to concede, and we agree, that Plaintiff has shown a prima-facie violation of the Equal Pay Act.[4] (Docket No. 43 at 9–10.) Nonetheless, Defendants argue that the wage disparity between Soto and Plaintiff was "based on legitimate factors other than sex." (Docket No. 43 at 10.) Specifically, Defendants argue that they paid Soto a higher salary due to his "strong interview, important skills deemed useful for the position, and a high prior

---

[4] Defendants write that "it is clear that, while the circumstances surrounding Mr. Alex Soto's hiring resulted in a wage disparity, the disparity was based on legitimate factors other than sex." (Docket No. 43 at 10.) We agree that the wage disparity between Soto and Plaintiff–two employees performing similar work that required equal skill, effort and responsibility–amounted to a prima-facie violation of the Equal Pay Act.

Civil No. 10-1103 (JAF)                                                                                             -7-

salary." (Id.) Citing to various district court opinions, Defendants argue these are permissible reasons for the salary disparity between Soto and Plaintiff. (Id.) Plaintiff challenges both the credibility and legal sufficiency of Defendants' professed criteria. (Docket No. 49.) For the reasons discussed below, we find that Defendants have failed to rebut Plaintiff's prima-facie case.

First, Plaintiff has demonstrated significant weaknesses in Defendants' factual account. In its moving papers, Defendants claimed that they had to offer Soto a high salary because in his previous job, Soto was earning approximately $90,000. (Docket Nos. 43 at 10; 44 at 3.) Defendants also claimed that Soto had Master's level courses in Nuclear and Mechanical Engineering "which could be very valuable to IAS." (Docket Nos. 43 at 10; 44 at 3.) When Plaintiff contested the evidentiary basis for these claims in her opposition to Defendants' statement of material facts, (Docket No. 49–1 at 2), Defendants did not attempt to prove that Soto actually possessed these qualifications (Docket No. 66 at 3). Instead, Defendants now argue that the hiring officers merely believed Soto had these qualifications.[5] (Docket No. 66 at 3.) Plaintiff disputes the credibility of Infotech's officers and argues that the real reason for the salary disparity was gender-related. (Docket No. 49 at 7.) We find that this is an issue of material fact best left for the jury to resolve.

---

[5] Plaintiff also disputes Defendants' contention that Soto had four years of project management experience. (Docket No. 49–1 at 10.) The only evidence that Infotech has presented on this question is an unsworn statement by Gravseth stating that Gravseth believed Soto had this experience. (Docket No. 66 at 2.) Plaintiff contests Gravseth on this issue. (Docket No. 49–1 at 10.) Plaintiff also introduced evidence that she has more years of total experience than Soto, and that both worked in the Project Management department. (Docket No. 51–1 at 27.)

Civil No. 10-1103 (JAF)                                                                                                  -8-

Moreover, none of the other factors cited by Defendants are adequate to justify this pay disparity. (Docket No. 43 at 9.) Defendants cite to two cases in this circuit for the proposition that "acceptable factors 'other than sex' include experience, prior salary, education, skills which the employer deems useful to the position, and a proven ability to generate higher revenues for the employer's business." (Id.) (citing Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 176 (D. Mass. 2001); Mullenix v. Forsyth Dental Infirmary for Children, 965 F. Supp. 120, 140 (D. Mass. 1996)). In addition to lacking binding precedent for this district, both cases are distinguishable from this case. In Scott, the court found a pay disparity justified where male employees had outperformed the female plaintiff "in virtually every indicator of proficiency." 141 F. Supp. 2d at 176 n.7. Here, the situation was reversed, as Plaintiff obtained equal or better performance evaluations than Soto.[6] In Mullenix, the court explicitly cautioned against relying on prior salary as a sole justification for a pay disparity. 965 F. Supp. at 140 n.38 (noting that salary disparities "may reflect the weaker bargaining power of women in the workplace.") Nor does an applicant's strong interview appear as a legitimate factor "other than sex" to justify a pay disparity. Scott, 141 F. Supp. 2d at 176 n.7; Mullenix, 965 F. Supp. at 140 n.38; see also Byrd v. Ronayne, 61 F.3d 1026, 1034 (1st Cir. 1995) (discussing factors other than sex).

Defendants next argue that Plaintiff is compensated at a higher rate than other similarly situated male coworkers. (Docket No. 43 at 10.) In support of this argument, Defendants

---

[6] See, e.g., Docket No. 51–2 at 22–27.

Civil No. 10-1103 (JAF) -9-

provide document from Infotech's Human Resources department, showing that other male employees with the same rank as Plaintiff–Specialist III–were paid less than Plaintiff. (Docket Nos. 44–1 at 3–4; 44–11 at 8; 44–14.) Mercado stated that Plaintiff "carries out essentially the same duties as all other similarly situated employees, and is assigned functions and work areas in substantially the same manner as all other Specialist III employees at IAS." (Docket No. 44–1 at 3–4.) Plaintiff objects that she and the other male employees are not similarly situated. (Docket No. 49 at 3.)

Again, we find that Plaintiff has presented a material issue of fact in dispute. To establish a prima-facie case under the Equal Pay Act, "it is appropriate for the plaintiff to compare herself to only one male comparater to determine wage differentials." Mullenix, 965 F. Supp. at 140 n.38. (citing Dubowsky v. Stern, Lavinthal, Norgaard & Daly, 922 F. Supp 985, 990 (D.N.J. 1996)); see also Maldonado-Cordero v. AT & T, 73 F. Supp. 2d 177, 190–91 (D.P.R. 1999) (for prima-facie case, plaintiff must establish that the employer paid different wages to "an employee") (internal quotation marks and citations omitted). Plaintiff has established a prima-facie case by highlighting the pay disparity between her and Soto. To determine whether the other employees are similarly situated under the EPA, we look at the employees' "actual job content, not titles or descriptions." Id. at 139 (internal citations and quotation marks omitted); see also Ingram, 414 F.3d at 232 ("the EPA is more concerned with substance than title"). Plaintiff has presented evidence that she was routinely given the most complex tasks in the department, and that in 2008, she was the only engineer in her department to have attained a technical proficiency assessment of C, the third-highest of four possible

Civil No. 10-1103 (JAF)                                                                                          -10-

levels. (Docket Nos. 49 at 2; 48–1 at 5–6; 51–2 at 45.) Based on the record before us, we cannot conclude that the other male employees were similarly situated to Plaintiff. We, therefore, deny Defendants' motion for summary judgment on the Equal Pay Act claim.

**B.    Disparate Treatment**

Plaintiff alleges that "Infotech has engaged in disparate treatment of its female employees, in violation of Title VII's prohibition against gender discrimination." (Docket No. 1 at 7.) Defendants argue that Plaintiff has failed to state a prima-facie case of disparate treatment, failed to show pretext, and failed to present any evidence of discriminatory intent. (Docket No. 43 at 11–12.) Plaintiff responds that Defendants failed to carry their burdens of production and persuasion. (Docket No. 49 at 6.) To resolve this dispute, we must first define the relevant legal standard for analyzing unequal pay claims under Title VII.

"Federal courts are divided on whether to use the McDonnell Douglas burden-shifting framework or the Equal Pay Act's more specialized paradigm when unequal pay claims are raised under Title VII." Rathbun v. Autozone, 361 F.3d 62, 72 (1st Cir. 2004) (comparing Meeks v. Computer Assocs. Int'l., 15 F.3d 1013, 1019–20 (11th Cir. 1994) (applying McDonnell Douglas), and Fallon v. Illinois, 882 F.2d 1206, 1214 (7th Cir. 1989) (same), with, Korte v. Diemer, 909 F.2d 954, 959 (6th Cir. 1990) (applying Equal Pay Act framework), and Kouba v. Allstate Ins. Co., 691 F.2d 873, 875 (9th Cir. 1982) (same)). The First Circuit has not taken a position on the matter. Id. (citing Rodriguez v. Smithkline Beecham, 224 F.3d 1, 8 n.11 (1st Cir. 2000) (reserving the question)).

Civil No. 10-1103 (JAF)                                                                                      -11-

Given that the pay disparity is at the core of Plaintiff's claim, we choose to apply the Equal Pay Act framework. Having already decided that Plaintiff presented a genuine issue of material fact as to this issue, see Part II.A above, we deny Infotech's motion for summary judgment on the Title VII discrimination claim.

**C.     Retaliation**

Plaintiff claims that, following her inquiry into the pay disparity between her and Soto, Defendants retaliated against her.[7] (Docket No. 1 at 7.) We assume for the sake of argument that Plaintiff has established a prima-facie case.[8]

When considering a motion for summary judgment on a Title VII claim, we may "dispense with strict attention to the [Title VII] burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." Gómez-González, 626 F.3d at 662 (quoting Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996)). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . ." Id. (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).

---

[7] Plaintiff brings her EPA and Title VII claims against Infotech only, and brings her Puerto Rico law claims against all defendants. (Docket No. 1 at 7.)

[8] Defendants contend that Plaintiff has failed to establish a prima-facie case of retaliation, arguing that none of the actions Plaintiff complains of were materially adverse employment actions and that Plaintiff has failed to establish causation. (Docket No. 43 at 13–14.) Rather than deciding that question, "we believe it both expeditious and appropriate under these circumstances to assume that [Plaintiff] has made out a prima-facie case in order to move onto the real issues in the case." Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010) (internal quotation marks and citations omitted)

Civil No. 10-1103 (JAF)                                                                               -12-

Even if a plaintiff demonstrates pretext, however, the Title VII claim will not survive summary judgment unless the plaintiff also creates a genuine dispute of material fact as to whether "the real reason for the employer's actions was discriminatory animus based on a protected category."  Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007).

Plaintiff cites various actions that she claims are materially adverse employment actions.[9] Defendants offer legitimate, business-related reasons for each of these. Plaintiff argues that those reasons are false and that the real reasons for the adverse actions were because she engaged in protected activity. As explained below, we find this argument unsubstantiated by the record evidence.

First, Plaintiff complains that she was taken off of an important assignment, the "Fan Demo project," as retaliation. (Docket No. 49 at 2.) Defendants offer a different explanation. Defendants admit that while Plaintiff was initially considered for the position, they chose to assign the project to Soto. (Docket No. 44 at 11.) The reason, they say, is because Infotech needed a capable engineer to work on the project full-time, and Plaintiff was still occupied with a different project. (Docket No. 44 at 11.) The project Plaintiff was working on at the time, the "HPW300," was also an "important, extremely complex" project for which customers demanded a full-time engineer. (Docket No. 44 at 10–11.)

---

[9] Defendants contend that Plaintiff has failed to establish a prima-facie case of retaliation, arguing that none of the actions Plaintiff complains of were materially adverse employment actions and that Plaintiff has failed to establish causation. (Docket No. 43 at 13–14.) Rather than deciding that question, "we believe it both expeditious and appropriate under these circumstances to assume that [Plaintiff] has made out a prima-facie case in order to move onto the real issues in the case." Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010) (internal quotation marks and citations omitted).

Plaintiff argues that if Defendants were truly concerned about the time Plaintiff could dedicate to the Fan Demo project, they would have simply reassigned the HPW300 project–which Plaintiff was close to finishing–to someone else. (Docket No. 49 at 4.) Plaintiff points out that it was common practice at Infotech to re-assign projects to achieve a balanced work load between employees. (Id.)

This argument fails to demonstrate pretext. See Gómez-Gonzalez, 626 F.3d at 662 ("Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . .") (internal quotation marks and citations omitted). There is nothing inconsistent or implausible about Defendants' explanation. Infotech's practice of occasionally reassigning work in no way suggests that Plaintiff ought to receive every desirable project. Nor do we find any inconsistencies in the reasons given by Gravseth in his deposition and sworn statement.[10] Both accounts suggest that Soto was chosen for his skill set and availability. (Docket Nos. 44–6 at 5; 51–2 at 56.)

Plaintiff also argues that Defendants' handling of her request for an I-Pass was retaliatory. (Docket No. 49 at 4–5.) Defendants put forward legitimate business-related explanations for their actions. (Docket No. 44 at 12–13.) According to Defendants, Plaintiff's request for an I-Pass in 2009 was not immediately granted because of a straightforward policy that applied to both males and females. (Id.) Tracy, the person in charge of handling I-Pass

---

[10] Plaintiff argues Gravseth contradicted himself in these two documents. (Docket No. 49–1 at 5.)

requests, had communicated the policy to Infotech's managers. (Id.) Under the policy, only those employees whose projects required remote access to Infotech's servers were granted an I-Pass. (Id.) I-Pass eligible projects were ones that included travel or a client request for remote access. (Id.) Plaintiff's initial reason–wanting to work from home–was insufficient. (Id.) Later, in 2010, when Plaintiff presented a medical reason for wanting an I-Pass, her request was granted. (Docket No. 44 at 13.)

Since Plaintiff received an I-Pass, she has received fewer work assignments. (Docket No. 67–1 at 1–4.) Defendants maintain this is due to concerns over Plaintiff's poor attendance record and Plaintiff's failure to ask for projects she can work on from home. (Id.) Plaintiff claims that her supervisor, Acosta, "doesn't give any tasks to [P]laintiff because [Acosta] believes that [P]laintiff has to work at the office and because she considers [Plaintiff] a risk." (Docket No. 49 at 5.) Plaintiff further argues that Defendants' account of the I-Pass saga is "contradictory," pointing to the alleged discrepancy in Tracy's deposition and sworn statement. (Docket Nos. 49 at 4; 49–1 at 5.)

We find Plaintiff's arguments unpersuasive. First, there is nothing inconsistent between Tracy's accounts. Tracy's deposition simply addresses facts that were not addressed in his unsworn statement, such as when he learned of Plaintiff's medical need for an I-Pass. (Docket Nos. 44–21 at 2; 51–2 at 37.) Second, Plaintiff can point to no evidence in the record, beyond her own testimony, showing that Defendants' account is pretext for retaliation. We are "not obligated to accept as true or to deem a disputed material fact[ ] each and every unsupported, conclusory, or imaginative statement made to the Court by a party." Garcia v. Bristol-Meyers

Squibb Co., 535 F.3d 23, 33 n.5 (1st Cir. 2008) (internal quotation marks and citations omitted).

The same shortcomings doom the rest of Plaintiff's retaliation allegations. Defendants provide business-related rationales for the physical location of Gravseth's desk, for asking about Plaintiff's performance, for following up on Plaintiff's pay disparity claim, and for granting Plaintiff's mmovement request. (Docket Nos. 43 at 15–18; 44–3 at 15, 17–18; 44–24; 67 at 6.) With respect to each of these allegations, Plaintiff either fails to respond to Defendants' explanations, or introduces no evidence beyond her own testimony. (Docket Nos. 49; 49–2.)

Even if Plaintiff could demonstrate pretext, which she cannot, her retaliation claim suffers from another flaw. "To defeat summary judgment, a Plaintiff must make a colorable showing that an adverse action was taken 'for the purpose of retaliating' against [her]." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007) (quoting Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997)). Plaintiff has failed to make such a showing.[11] Her retaliation claim therefore fails.

**D.    Supplemental Claims**

Defendants argue that Plaintiff's claims under Law 100, Law 69 and Law 17 must fail. (Docket No. 43 at 21.) Referring to the three laws, Defendants write that "[e]ach imposes civil liability on any employer who terminates, suspends or discriminates against an employee for any

---

[11] Plaintiff writes that "[i]t is particularly telling that Infotech decided to raise Plaintiff's salary to $65,000, to make it equal to Soto's." (Docket No. 49 at 5.) It is unclear what, if any, argument Plaintiff is making here. We do not see the salary increase as a sign of retaliation. Rather, we agree with the First Circuit that, "[e]vidence that an employer willingly granted an employee's request for an accommodation, though by no means dispositive of the matter, tends to militate against a finding of retaliation." Soileau v. Gilford of Me., 105 F.3d 12, 17 (1st Cir. 1997) (ruling on a claim of retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12117(a)).

Civil No. 10-1103 (JAF)                                                                                          -16-

of the aforementioned reasons [including gender]. . . with respect to . . . compensation." (Id.) Defendants then argue that "because Plaintiff has never been discriminated against," there can be no claims under Law 100, Law 69 or Law 17. (Id.) Defendants refer us to their discussion of Plaintiff's claims under the EPA and Title VII. (Id.) As we deny Defendants' motion for summary judgment on the EPA and Title VII disparate treatment claims, see Part II.A and II.B, we also deny Defendants' motions on Law 100, 69, and Law 17.

Defendants move for summary judgment on Plaintiff's Law 115 claims. (Id. at 19–20.) Plaintiffs do not respond. (Docket No. 49.) Law 115 "protects employees that collaborate in investigations or offer testimony before an administrative, judicial or legislative forum." (Rojas-Ramirez v. BMJ Foods, Inc., No. 09–1593, 2011 WL 693621, at *12 (D.P.R. Feb. 24, 2011) (internal quotation marks and citations omitted). Under Law 115, the "evidentiary mechanism mirrors the burden shifting framework" for resolving federal Title VII retaliation claims. Rivera Rodriguez v. Sears Roebuck de P.R., Inc., 367 F. Supp. 2d 216, 230 (D.P.R. 2005), aff,d, 432 F.3d 379, 383 (1st Cir. 2005). Courts in this district agree that the "analytical principles are substantially the same and in the interest of judicial efficiency, do[] not analyze the claims separately under federal and Puerto Rico law." Mojica v. El Conquistador Resort and Golden Door Spa, 714 F. Supp. 2d 241, 262 (D.P.R. 2010). For the reasons discussed above in Part II.C, we grant Defendants' motion for summary judgment on Plaintiff's Law 115 claims. Plaintiff has presented no genuine dispute as to an issue of material fact that would allow her retaliation claim to survive.

Civil No. 10-1103 (JAF)                                                                                               -17-

Finally, Defendants move for summary judgment on Plaintiff's claims under Article 1802 and Article 1803. (Docket No. 43 at 21–22.) Plaintiff does not respond. (Docket No. 49.) It is well-settled that a plaintiff may not recover under Article 1802 for conduct that is covered by specific labor or employment legislation. See Medina v. Adecco, 561 F. Supp. 2d 162, 175 (D.P.R. 2008) (dismissing Article 1802 claims against plaintiff's individual supervisor, where plaintiff had pled claims under specific Puerto Rico employment statutes); Barreto v. ITT World Directories, Inc., 62 F. Supp. 2d 387, 393 (D.P.R. 1999) (holding that plaintiff may not recover under Article 1802 "or under any other general statute for actions or facts intended to be addressed" by specific labor or employment legislation).

## IV.

## Conclusion

For the reasons stated above, we hereby **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment (Docket No. 43). We **DISMISS** all of Plaintiff's retaliation claims under Title VII and Law 115, as well as Plaintiff's general tort claims under Article 1802 and 1803. Surviving summary judgment are the following claims: Against Infotech, Plaintiff's claims under the Equal Pay Act, Title VII disparate treatment, and remaining supplemental claims under Law 100, Law 69 and Law 17. Against Gravseth, Mercado and Tracy, the only claims remaining are under Law 100, Law 69 and Law 17.

The parties are urged to consider all settlement possibilities and, to that end, **a final settlement conference shall be held on February 2, 2012, at 1:30 P.M. Trial shall be held**

Civil No. 10-1103 (JAF)                                                                -18-

**on February 7, 2012, at 9:30 A.M.  A Final Proposed Pretrial Order shall be filed by February 6, 2012.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 19th day of January, 2012.

                                                       s/José Antonio Fusté
                                                       JOSE ANTONIO FUSTE
                                                       U.S. District Judge